McCRIMMON, RESPONDENT, *v.* MURRAY, APPELLANT.

(No. 3,017.)

(Submitted June 13, 1911. Decided June 22, 1911.)

[117 Pac. 73.]

*Contracts—Performance to Satisfaction of Party—Variance—Instructions—Evidence—Declarations of Party—Res Gestae.*

Contracts—Performance to Satisfaction of Party—Evidence—Sufficiency.
  1. Evidence in an action to recover on an alleged oral promise to pay plaintiff for information relative to a vein of ore in defendant's quartz claim, knowledge of the existence of which was gained by the former

while working in an adjoining property, if such information prove satisfactory to promisor, *held* sufficient to go to the jury upon the question whether the agreement was made as alleged.

Variance—Failure of Proof.

2. Where the evidence fails to establish the alleged cause of action in its general scope, there is presented, not a case of variance, but a failure of proof.

Contracts—Performance to Satisfaction of Party—Construction.

3. Whether the information sought by defendant was satisfactory to him was a matter exclusively for his own judgment, exercised honestly and in good faith, his good or bad faith to be inferred from his declarations and conduct subsequent to an examination of the premises made by him, and the value of the information.

Same—Interpretation—Office of Court.

4. In adjudicating rights under a contract, a court's only office is to enforce such rights as fixed by their own agreement; it cannot make a contract for them and determine their respective rights accordingly.

Same—Instructions Inapplicable to Issues—Error.

5. The principal issue presented by the pleadings was whether defendant had agreed to pay plaintiff a certain sum, provided the information claimed by the latter to be in his possession should prove *satisfactory* to the former; there was sufficient evidence to go to the jury on this point. While some testimony was admitted that the information was valueless, in other instances such evidence was excluded as immaterial. The court in its instructions charged the jury that defendant was liable if the information was proved to have been *valuable*. *Held*, error as submitting the case upon an issue outside the pleadings.

Appeal and Error—Instructions—Inapplicability.

6. The argument that because an action had been twice tried and the same result reached, a new trial should not be ordered, has no weight where notwithstanding the complaint had been so amended after the first trial as to eliminate a material allegation, the court in its instructions so treated the case as to authorize a verdict in favor of plaintiff upon a question no longer relied on for recovery by reason of the amendment.

Same—Declarations of Party—Cautionary Instruction—When Refusal Error.

7. *Held*, that though the propriety of giving an instruction in the words of paragraph 4, section 8028, Revised Codes, that "the oral admissions of a party are to be viewed with caution," is a matter of discretion in the trial court, refusal to give it in this instance was error.

Same—Instructions—When Refusal not Error.

8. Refusal to give instructions is not error where those given substantially cover the law embodied in those requested.

Evidence—Declarations of Party—*Res Gestae*.

9. What defendant said and did while engaged in making an examination of the underground workings in his claim to determine the character and value of the vein to which the information, claimed to have been given him by plaintiff, related, was competent to be elicited from a witness who accompanied him on his tour of inspection; the evidence tended to show the state of defendant's mind produced by his observations and was part of the *res gestae*.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by Duncan McCrimmon against James A. Murray. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed and remanded.

*Mr. James E. Murray,* for Appellant, submitted a brief and a reply brief, and argued the cause orally.

On the issues framed by the pleadings herein it was incumbent upon the plaintiff to establish a contract by the terms of which the defendant Murray agreed to pay the plaintiff the amount claimed, "if the alleged information was found satisfactory." There is not any evidence in the record establishing, or tending to establish, the contract alleged in the pleadings, and plaintiff must recover, if at all, upon the cause of action set out in the complaint and not upon some other matter which may be developed by the proofs. (*Reed* v. *Norton,* 99 Cal. 617, 34 Pac. 333; *Cox* v. *McLaughlin,* 63 Cal. 196; *Spellman* v. *Rhode,* 33 Mont. 26, 81 Pac. 395; *Kalispell Liquor Co.* v. *McGovern,* 33 Mont. 394, 84 Pac. 709; *Forsell* v. *Pittsburgh Co.,* 38 Mont. 413, 100 Pac. 218; *Flaherty* v. *Butte Electric Ry. Co.,* 40 Mont. 454, 135 Am. St. Rep. 630, 107 Pac. 416; *Knuckey* v. *Butte Electric Ry. Co.,* 41 Mont. 314, 109 Pac. 979.)

Because testimony of oral admissions of a person is peculiarly subject to the fallibility of human memory, and because it is easily fabricated, imperfectly comprehended, wrongly interpreted, or misunderstood, courts declare that it should always be received with caution, and that it is weak and even "dangerous" evidence. (17 Cyc. 806–809.) In the case of *Smith* v. *Whittier,* 95 Cal. 279, 30 Pac. 529, the supreme court of California said: "Admissions are generally regarded as weak evidence for the proof of a fact, and are never conclusive of the fact stated, or of the inference to be drawn therefrom, and our statute requires the jury to be instructed on all proper occasions 'that the evidence of the oral admissions of a party ought to be viewed with caution.' " The Revised Codes provide that evidence of the oral admissions of a party is to be viewed with caution. (Sec. 8082, subd. 4.) An alleged oral admission is of no weight if the opposite party proves the fact to be otherwise. (16 Cyc. 1043–1045.)

The contract in the present case is very similar to contracts to pay a reward for information given which "shall lead to the apprehension and conviction" of a person guilty of or charged with some crime. In such a case, as was held by the supreme court of New York: "It is entirely clear that in order to entitle any person to the reward offered he must give such information as shall lead to both apprehension and conviction. * * * Both are conditions precedent." (*Fitch & Jones* v. *Snedaker*, 38 N. Y. 248, 97 Am. Dec. 791; Keener's Cases on Contracts, 45.) In the case at bar if the agreement was that Murray should pay "if the conditions were as stated," and "that the information was valuable," and "that he would pay if the information was satisfactory," all of these conditions precedent must be alleged and established by plaintiff before he can recover. There is a vast distinction between "satisfactory" and "valuable." "Satisfactory" refers to the mental condition of defendant and not what a court or jury might consider "satisfactory." (*Zaleski* v. *Clark*, 44 Conn. 218, 26 Am. Rep. 446; *Stutz* v. *Loyd-Hanna Co.*, 131 Pa. 267, 18 Atl. 875; *Singerly* v. *Thayer*, 108 Pa. 291, 56 Am. St. Rep. 207, 2 Atl. 230; *Haney-Campbell* v. *Preston Creamery*, 119 Iowa, 188, 93 N. W. 297; *Baltimore & Ohio Ry.* v. *Brydon*, 65 Md. 198, 611, 57 Am. Rep. 318, 3 Atl. 306, 9 Atl. 126; *Wood Machine Co.* v. *Smith*, 50 Mich. 565, 45 Am. Rep. 62, 15 N. W. 906.)

The defendant sought to prove the declarations made by himself at the time he examined the vein with the witness Daum; this evidence tended to show the improbability of defendant entering into such a contract, and besides was a part of the *res gestae*. (Rev. Codes, sec. 7867; 34 Cyc. 1642; *Russell* v. *Frisbie*, 19 Conn. 205; *Stirling* v. *Buckingham*, 46 Conn. 461.) The conduct of the parties toward each other during that entire time is a part of the transaction. (*Burns* v. *Smith*, 21 Mont. 251, 69 Am. St. Rep. 653, 53 Pac. 742–748; *Trull* v. *True*, 33 Me. 367.) When the making of an alleged contract is directly put in issue, all of the surrounding circumstances which may be considered part of the *res gestae* are admissible in evidence. (9 Cyc. 765.) Matters incidental to the main fact and the circumstances,

facts and "declarations which grow out of the main fact" are parts of the *res gestae* and admissible in evidence. (34 Cyc. 1642.) What defendant did or said at the time he visited the mine was not hearsay, but was a part of the transaction itself. "The *res gestae* of a transaction is what is done during the progress of it or so nearly upon the actual occurrence as fairly to be treated as contemporaneous with it." (*Hall* v. *State,* 48 Ga. 607; *Territory* v. *Clayton,* 8 Mont. 1, 19 Pac. 293.) They may extend over a long period of time if the transaction be of a continuing character. (*McGowen* v. *McGowen,* 52 Tex. 657; *Territory* v. *Clayton, supra.*)

In behalf of Respondent, *Messrs. Maury & Templeman, Mr. M. J. Cavanaugh,* and *Mr. J. A. Poore,* submitted a brief; oral argument by *Messrs. Templeman* and *Cavanaugh.*

Unless defendant was prevented from having a fair trial, an alleged variance will not warrant a new trial. (*Butterworth* v. *Teale,* 54 Wash. 14, 102 Pac. 768; *Olson* v. *Snake River,* 22 Wash. 139, 60 Pac. 156; *Ernst* v. *Fox,* 26 Wash. 526, 67 Pac. 258; *Johnson* v. *Gary,* 18 Idaho, 623, 111 Pac. 855; *Kuhn* v. *McKay,* 7 Wyo. 42, 49 Pac. 473, 51 Pac. 205; *Meldrum* v. *Kenefick,* 15 S. D. 370, 89 N. W. 863.) "A variance between the pleadings and the proof is not material where the case was contested on the proper proof." (*Burt* v. *Gotzian,* 102 Fed. 937, 43 C. C. A. 59; *A. B. Smith Co.* v. *Jones,* 75 Miss. 325, 22 South. 802; *Bedtkey* v. *Bedtkey,* 15 S. D. 310, 89 N. W. 479; *Ellison* v. *Dunlap* (Ky.), 78 S. W. 155; *Woodford* v. *Kelley,* 18 S. D. 615, 101 N. W. 1069; *Patterson* v. *Missouri etc. Ry. Co.,* 24 Okl. 747, 104 Pac. 31; *Antonelle* v. *Kennedy etc.,* 140 Cal. 309, 73 Pac. 966; *Quackenbusch* v. *Sawyer,* 54 Cal. 439; *Pogue* v. *Ball,* 4 Cal. App. 406, 88 Pac. 376; *M. E. Church* v. *Seitz,* 74 Cal. 297, 15 Pac. 839.)

After two findings by juries the same way on a question of fact, the verdict will not be disturbed because the weight of the evidence seems to the court to be against such findings. (*Lewis* v. *Equitable Mtg. Co.,* 99 Ga. 336, 25 S. E. 728; *Dempsy* v. *City of Rome,* 99 Ga. 192, 27 S. E. 668; *Thornton* v. *Abbott,* 105 Ga. 846, 32

S. E. 603; *Dethrage* v. *City of Rome*, 125 Ga. 802, 54 S. E. 654.) Where a trial is had and a verdict given for defendant, a new trial had and second verdict for defendant, on motion for third trial the court will give greater weight to verdict (*Atwood Lumber Co.* v. *Watkins*, 94 Minn. 464, 103 N. W. 332; *Lacs* v. *Breweries*, 107 App. Div. 250, 95 N. Y. Supp. 25), as this is peculiarly the province of a jury. (*Fox* v. *Oakland*, 118 Cal. 55, 62 Am. St. Rep. 216, 50 Pac. 25; *Perry* v. *Lynch*, 10 Colo. App. 549, 52 Pac. 219.) A verdict on conflicting evidence will not be disturbed. (*Lehman* v. *Knapp*, 33 Mont. 133, 82 Pac. 798; *Layng* v. *Mt. Shasta Min. Spring Co.*, 135 Cal. 141, 67 Pac. 48.) Although the plaintiff told different stories as to how the accident happened, the question was for the jury. (*Joyce* v. *Am. Pap. Co.*, 184 Mass. 230, 68 N. E. 213; *Hansen* v. *Haley*, 11 Idaho, 278, 81 Pac. 935.)

The appellant contends that the contract was a conditional one, in which the precedent condition was that the information should be valuable, and that this condition was not proved or complied with. If there were any conditions inserted at the first meeting of the parties, such as that the information should be valuable or satisfactory, or be paid for if he found the conditions as McCrimmon stated, these conditions were inserted by Murray for his own benefit, and when at the second meeting he agreed to pay for the information received unconditionally, he waived all of such conditions, as he might justly and legally do. If so, we contend when Murray made the unconditional promise to pay McCrimmon, at the second meeting, he then and there waived all conditions, if there were any uncomplied with; the contract was consummated; the minds of the parties met; they parted with the complete understanding that as soon as the mine was sold the ten per cent would be paid.

Subsequent acts and declarations of the parties to a contract tending to show their construction of the contract may be shown to explain its meaning. Murray construed the contract as valuable and satisfactory to him, and the condition near enough at least as they had been represented to him, when he made the unconditional promise at the second meeting to pay McCrimmon.

(*Lewiston & A. R. Co.* v. *Grand Trunk,* 97 Me. 261, 54 Atl. 750; *Laclede Con. Co.* v. *T. J. Moss Co.,* 185 Mo. 25, 84 S. W. 76; *Kopper* v. *Fulton,* 71 Vt. 211, 44 Atl. 92; *Evansville & R. Co.* v. *Dunn,* 17 Ind. 604.)

There is no doubt but the giving of the information by Mc-Crimmon was a valuable consideration for any promise Murray might make. "If a person possesses information which he is not bound legally to disclose, he may make it the subject of a valid sale, and the imparting of it will be a valuable consideration for a promise." (6 Am. & Eng. Ency. of Law, 2d ed., p. 721; *Green* v. *Brooks,* 81 Cal. 328, 22 Pac. 849; *Lucas* v. *Pico,* 55 Cal. 126; *Reed* v. *Golden,* 28 Kan. 632, 42 Am. Rep. 181.) If on account of the promise one has done something which he was not legally bound to do, it is a good consideration. (*Presbyterian Board of Missions* v. *Smith,* 209 Pa. 361, 58 Atl. 689.) A promise to quit using tobacco is a good consideration for a promise. (*Talbott* v. *Stemmons,* 11 Ky. Law Rep. 451, 12 S. W. 297.) Where a party gets all the information he voluntarily and knowingly contracts for, he will not be allowed to say that he got no consideration. (*Smock* v. *Pierson,* 68 Ind. 405, 34 Am. Rep. 269; *Wolford* v. *Powers,* 85 Ind. 294, 44 Am. Rep. 16; *Pierce* v. *Pierce,* 17 Ind. App. 107, 46 N. E. 480; *First Nat. Bank* v. *Farmers' Nat. Bank* (Ind. App.), 82 N. E. 1013.)

The giving of an instruction that oral admissions should be viewed with caution, which contains a mere commonplace that an intelligent juror would be apt to know about and act upon in the absence of the instruction, is not regarded as harmful, or as constituting a proper ground for reversal. (*People* v. *Tibbs,* 143 Cal. 100, 76 Pac. 904.) Neither the giving nor refusal of such an instruction would warrant a reversal. (*People* v. *Wardrip,* 141 Cal. 229, 74 Pac. 744; *People* v. *Farrington,* 140 Cal. 656, 74 Pac. 288; *People* v. *Davenport,* 13 Cal. App. 632, 110 Pac. 319; see, also, *Wood* v. *Los Angeles Traction Co.,* 1 Cal. App. 474, 82 Pac. 547; *Brown* v. *Sharphouser Con. Co.,* 159 Cal. 89, 112 Pac. 874.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to recover the sum of $15,000, which it is alleged the defendant promised to pay plaintiff for certain information communicated by him to the defendant. The amended complaint alleges:

"(1) That between the first day of April, A. D. 1904, and the first day of November, A. D. 1904, at the city of Butte, Silver Bow county, Montana, the plaintiff, at the special instance and request of the defendant, gave and furnished to him certain information with reference to the existence of a certain vein or lead of ore shown and disclosed within the boundaries of the Alex Scott lode claim, extended downward vertically, by a cross-cut run northerly from the West Colusa shaft at the 1200-foot level of said shaft, or what is known as the 1200-foot level thereof, for which information so furnished, the defendant promised and agreed to pay plaintiff ten per cent of the selling price of the said Alex Scott lode claim, when a sale of the same should be made, if upon investigation by the defendant, in his judgment, the said information should be satisfactory to him, the said defendant.

"(2) That thereafter the said defendant made such investigation as to the information given him by the plaintiff and the said information was satisfactory to the defendant, and at a meeting thereafter held for that purpose defendant confirmed his agreement theretofore made as above stated, and then and there promised and agreed to pay plaintiff ten per cent of the sale price of the said Alex Scott lode claim, when the same should be sold."

It is further alleged that thereafter the defendant sold the mine for the sum of $150,000; that he has never paid to plaintiff the sum of $15,000, ten per cent of said selling price, nor any part thereof, but has refused and still refuses to do so.

The answer admits the sale as alleged, and that the defendant has not paid to plaintiff any sum whatsoever. It denies all the other material allegations contained in the complaint. It

alleges affirmatively that plaintiff's cause of action is barred by the statute of limitations applicable to contracts and agreements not in writing, and that the contract is within the statute of frauds. The issues made upon these allegations were apparently abandoned at the trial. In any event, they are not involved in any way on this appeal. The trial resulted in a verdict and judgment for the plaintiff. From the judgment and an order denying his motion for a new trial, the defendant has appealed.

Contention is made that the evidence is insufficient to justify [1] the verdict. It would be impracticable to quote it in detail. We have studied it with that degree of care which the earnest argument made by counsel and the character of the controversy demand. We readily concede that it is not as satisfactory as it might be, but we do not feel justified in saying that it is so far without substance that the plaintiff was not entitled to have it submitted to a jury.

The plaintiff testified that as early as April 1, 1904, while working in the West Colusa mine, he had observed that a cross-cut at the 1200-foot level of the West Colusa workings. running through the Alex Scott mine belonging to the defendant, had intersected a vein in the latter; that he soon thereafter sought and obtained an interview with the defendant. and told him that he had information about the mine which might be of value to him; that the defendant then told him that he knew of the existence of the cross-cut, because it had been extended into the Alex Scott claim by his permission, but if the information proved to be valuable, or, as plaintiff stated in another place in his testimony, satisfactory, he would give him ten per cent of the selling price of the mine; that thereupon he informed the defendant of the existence of the vein; that it contained from eight to ten feet of smelting ore; that thereupon the defendant stated that the information was very valuable, and if upon examination, which he would make, he found the facts as stated he would pay as he said, upon the sale of the mine; that in a subsequent interview, within ten days or two weeks thereafter, the defendant told him that he had made the examination, that he had found

the conditions as stated by the plaintiff, and would keep good his promise theretofore made. It appears that at that time the defendant was negotiating for a sale of his property to the owner of the West Colusa mine, at the price of $150,000, and that this fact was known to both plaintiff and defendant. These negotiations failed, but subsequently, in 1906, the defendant sold the Alex Scott mine to another company for $150,000. The plaintiff is corroborated in his statements as to what transpired at the two interviews by one witness, who was present at both of them. The defendant denied that either of the interviews occurred. He stated, however, that he was informed of the existence of the vein while on the street, by a person who was not known to him, but who he subsequently learned was the plaintiff; that he made no promise to compensate him; that upon examination he found a vein in the cross-cut, but that it contained no ore of value. It is true the complaint alleges that the stipulation for compensation was conditional upon the information proving satisfactory to the defendant, after personal examination to ascertain if the conditions were as stated by the plaintiff; yet, if it was true that in the second interview the defendant stated that he had found the conditions as described by plaintiff and would pay him as he had promised, upon the sale of the property, this tended to show that he had found the information satisfactory. Proof that the vein carried value, and hence that the information was valuable, apart from the expression of satisfaction with its condition and the promise to pay, would not establish that it was satisfactory to defendant, within the meaning of the contract as alleged. Proof of value from any point of view would not of itself establish the satisfactory character of the information. There is a distinction in the meaning of the terms "valuable" and "satisfactory." "Valuable" means capable of being valued or estimated. "Satisfactory" means affording satisfaction, satisfying; that fully satisfies or contents. (Century Dictionary.) A thing may possess value, and yet be unsatisfactory; and, on the other hand, may be satisfactory, and yet have no value. To illustrate from the instant case: If the information had been that the running of the cross-cut through the defendant's

ground had resulted in demonstrating that it was barren it might have been considered of value, in that it would aid the defendant in determining whether, in default of the contemplated sale, he would be justified in the expenditure of the money to develop it; but it would also be an evidence to him of lack of value in the claim, and therefore, though adjacent to other valuable properties, that he could not realize from a sale of it what he anticipated. It would therefore be entirely unsatisfactory. Nevertheless, if the defendant, having upon examination found the conditions as described to him, expressed himself as satisfied and willing to pay upon the consummation of a sale, this tended to show that the agreement of the parties was as alleged, and that the condition upon which the stipulation to pay was to be binding had been fulfilled. From this point of view, the evidence tended to establish the cause of action stated, in its general scope and meaning.

Another contention is that the court erred in the theory it adopted in submitting the case to the jury. The following paragraphs of the instructions, to the theory of which the others conform, are sufficient for illustration:

"(A) You are instructed that every man who is competent to make a valid contract is free to make such contract as he will, and free to refuse to make such contract, but when once made, if the contract is legal, and is not induced by fraud or mistake, he is bound by it. So in this case, if you find from a preponderance of the evidence that the defendant promised to pay the plaintiff, in consideration of information to be given by the plaintiff to the defendant concerning a vein of ore in the Alex Scott mine, if the information were on investigation by the defendant found to be valuable, ten per cent of the sale price of the Alex Scott mine when he sold it, and that relying upon this promise by the defendant plaintiff gave him such information, such a transaction would constitute a binding contract, and if you further find on investigation by the defendant he found it to be valuable he is bound to pay the percentage, and your verdict should be for the plaintiff. You are further instructed that it is admitted by the defendant that the Alex Scott mine was,

prior to the commencement of this action, sold by him for the sum of $150.000.''

"(2) You are instructed that the plaintiff relies on a conditional or contingent contract; that is, it is claimed by him that the defendant promised, in consideration of the giving of certain information regarding certain ore bodies in the Alex Scott lode claim, that he would pay the plaintiff therefor, or upon the condition or contingency that the alleged information should prove valuable; then it is incumbent upon the plaintiff to prove by a preponderance of the evidence that the alleged information claimed by plaintiff to have been given defendant was valuable, and if you find from the evidence in this case, and from all the surrounding circumstances as shown by the evidence, that the alleged information claimed by plaintiff to have been given to the defendant was not valuable, then and in that event your verdict must be for the defendant and against the plaintiff.''

In view of the issues made by the pleadings, the theory adopted by the court was erroneous. At the close of the evidence, the defendant moved the court to direct a verdict in his favor, on the ground, among others, that the evidence tended to establish a contract substantially different in its terms from that alleged, *viz.*, that defendant had agreed to pay, if the information proved to be valuable; and hence that there was a material variance between the allegations in the complaint and the proof. In overruling the motion, the court stated that, though the variance was apparent, it was immaterial, and thereupon proceeded to instruct the jury as indicated. As already pointed out, the evidence was sufficient to go to the jury upon the question whether the contract was made as alleged. If the condition of the evidence had been as the court concluded, the motion should have been sustained, for the variance would have been material, and therefore fatal to plaintiff's case, within the rule declared by the statute [2] and applied in many cases by this court, *viz.*, that if the evidence fails to establish the cause of action in its general scope there is presented, not a case of variance, but a failure of proof. (*Gilliam* v. *Black*, 16 Mont. 217, 40 Pac. 303; *Newell* v. *Nicholson*. 17 Mont. 389, 43 Pac. 180; *Spellman* v.

*Rhode,* 33 Mont. 21, 81 Pac. 395; *Flaherty* v. *Butte Electric Ry. Co.,* 40 Mont. 454, 135 Am. St. Rep. 630, 107 Pac. 416; *Knuckey* v. *Butte Electric Ry. Co.,* 41 Mont. 314, 109 Pac. 979.)

Under the issues as made, the defendant had the exclusive right to determine whether the information was satisfactory; for this term refers to the mental condition of the defendant. and not to that of the court or jury, and from the nature of the [3] case his judgment as to its character was the standard by which the court and jury should be governed. This rule is well settled. (*Zaleski* v. *Clark,* 44 Conn. 218, 26 Am. Rep. 446; *Stutz* v. *Loyal Hanna C. & C. Co.,* 131 Pa. 267, 18 Atl. 875; *Baltimore & Ohio Ry. Co.* v. *Brydon,* 65 Md. 198, 57 Am. Rep. 318, 3 Atl. 306, 9 Atl. 126; *Haney-Campbell Co.* v. *Preston Creamery Assn.,* 119 Iowa, 188, 93 N. W. 297.) It is especially applicable to the purchase of articles which depend for their value largely upon individual taste and sentiment, rather than their utility from a commercial point of view. In such cases the reason or motive which prompts their rejection is not the subject of judicial inquiry. (*Haney-Campbell Co.* v. *Preston Creamery Assn., supra; Zaleski* v. *Clark, supra; Gibson* v. *Cranage,* 39 Mich. 49, 33 Am. Rep. 351; 1 Mechem on Sales, sec. 666.) According to the view of some of the courts, if the article is desired only for its commercial value, the strict rule is relaxed to the extent that, though the judgment of the purchaser must be deemed conclusive, it must be exercised honestly and in good faith. (*Haney-Campbell Co.* v. *Preston Creamery Assn., supra; Baltimore & Ohio Ry. Co.* v. *Brydon, supra.*) This rule seems to be entirely just, and we can see no reason why it should not apply to the case in hand, and the good or bad faith of the defendant be left to be inferred from his declarations and conduct subsequent to the examination made by him and the value of the information, dependent, of course, upon the conditions as they actually were at the time he made the examination.

The instructions took from the jury consideration of the satisfactory character of the information, and authorized them to determine the defendant's liability solely upon its value. This [4] was equivalent to the making of a contract for the parties

and determining their rights accordingly; whereas, the court's only office is to enforce the rights of parties as they have fixed them by their own agreements. If, in the opinion of the court, the evidence presented a material variance, it might have directed an amendment upon proper terms (Rev. Codes, sec. 6585); but [5] it could not submit the case to the jury upon evidence tending to establish a cause of action wholly outside the issues, without according to the defendant full opportunity to controvert it with his proof. These remarks are particularly pertinent to the conditions presented in this case; for, though some evidence was submitted as tending to show that the vein with reference to which the information was given was almost entirely barren, thus tending to establish the fact that the information was valueless, in other instances, upon objection that such evidence was immaterial, it was excluded.

Much stress is laid by counsel for plaintiff upon the fact that [6] there have been two trials of this case. This, he says, demonstrates that the defendant was not misled by the supposed variance, or prejudiced by the theory adopted by the court in instructing the jury. The complaint upon which the first trial was had alleged that payment was to be made upon condition that the information proved to be both valuable and satisfactory; whereas, under the issues as they now are, recovery rests solely upon proof of its satisfactory character within the rule stated above. The amendment of the pleadings not only relieved the plaintiff of the burden of establishing value, but was notice to defendant that the question of value was not relied on as the basis of recovery. In fact, the plaintiff offered no evidence on the subject, except the declaration of defendant at the second interview, and when objection was made by counsel to that offered by the defendant, it was excluded. A judgment obtained under these conditions cannot be permitted to stand, without violation of the rule that every person is entitled to be heard upon the issues tendered to him by his adversary. Complaint is made of other paragraphs of the instructions given, but we find no substantial error in any of them.

The court refused the request of defendant to give the following instruction: "You are instructed that the oral admissions of a party are to be viewed with caution." Though the propriety [7] of giving such an instruction in any case is lodged largely in the discretion of the trial court, and is to be given, or not, according to the court's view of the conditions presented by the evidence (Rev. Codes, sec. 8028), under the peculiar circumstances of this case, the jury should have been cautioned as to how they should view the evidence, the solution of the question whether the defendant was satisfied with the information communicated to him, and made the promise to pay, depending, as it did, entirely upon the truth of the statements of plaintiff and a single other witness, as to defendant's declarations after he made the examination of the vein exposed in the Alex Scott claim. It was error to refuse this instruction.

Complaint is made of the refusal of other instructions requested. We find no error in this behalf, because the instructions [8] given covered substantially the law embodied in those requested.

When the defendant went into the cross-cut to make the examination, he was accompanied by Mr. Daum, an engineer employed in the West Colusa mine. During the examination of Mr. Daum, he was asked to detail to the jury the acts and declarations of the defendant, indicating his estimate of the character and value of the vein, while he was engaged in making his examination of it. The evidence was excluded as hearsay. [9] This was error. The examination was one of the series of steps leading up to the consummation of the contract, without the doing of which there would have been no contract. Clearly, what the defendant said and did while engaged in it tended to show the state of mind produced by his observations, was a part of the *res gestae,* and was competent. (Rev. Codes, sec. 7867; *Territory* v. *Clayton,* 8 Mont. 1, 19 Pac. 293; *Burns* v. *Smith,* 21 Mont. 251, 69 Am. St. Rep. 653, 53 Pac. 742; 34 Cyc. 1642; *Carr* v. *State,* 43 Ark. 99; *Stirling* v. *Buckingham,* 46 Conn. 461.)

It is not necessary to give special notice to other questions discussed by counsel.

The judgment and order are reversed and the cause is remanded, with directions to grant the defendant a new trial.

*Reversed and remanded.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.